WaRDLaw, Ch.,
dissenting. This case involves a small sum of money, and no new or great principle; yet it has the interest of presenting a concrete issue of law and fact, upon which the circuit chancellor differed from the master, the Court of Appeals in equity was equally divided, and a conclusion has been attained in this Court of dernier resort by a bare majority.
On February 12, 1848, Dickson & Mills, by the cognovit of Mills only, confessed a judgment for a large sum of money to 0. Mills & Co., a mercantile firm composed of Otis Mills & E. M. Beach ; and on this judgment a fieri facias was issued the same day. On February 14, 1848, Dickson & Mills assigned all their assets to the defendant Beach in trust for their *503 creditors, giving a preference to 0. Mills & Co. and some other creditors; and on February 23, 1848, C. Burckmyer, plaintiff’s intestate, was appointed agent of the creditors under the Act of 1828. The goods constituting the stock in trade of Dickson & Mills, were seized by the sheriff under th q fieri facias of 0. Mills & Co.; and on April 11,1848, a motion was made, at the instance of the agent, before Judge Wardlaw, to set aside the judgment of 0. Mills & Co , which resulted in an order by the Judge that the execution be suspended until the second Monday of May following. The motion to vacate this judgment was renewed at May Term of the Common Pleas, and refused by the same Judge. From this refusal the agent appealed, and his appeal was sustained by the Law Court of Appeals, and the judgment declared to be void. On April 12, 1848, the day after the fieri facias had been suspended by the consent of all parties in interest, the sheriff sold the goods of Dickson & Mills, and received the proceeds of sale. And on May 16,1848, he paid over the nett proceeds of sale, fifteen thousand three hundred and five dollars, eighty-one cents, to the attorneys of 0. Mills & Co., taking for his indemnity a bond with surety from the plaintiffs in execution. This was the only actual payment of this sum ever made to the assignee, and the possession of the money remained undisturbed; although afterwards, on May 18, 1849, the assignee subscribed in that character, prefixing the last date to the receipt given by the attorneys of 0. Mills & Co. to the sheriff on May 16, 1848. The money thus paid to 0. Mills & Co., proved in event to be smaller than the sum they were rateably entitled to as preferred creditors under the assignment of Dickson & Mills. On April 28, 1848, E. L. Adams, and other creditors of Dickson & Mills, filed their hill in the Court of Equity to set aside the assignment of Dickson & Mills so far as it gave a preference to 0. Mills & Co.; and the answers of the sheriff filed on June 17, 1848, and of Otis Mills and E. M. Beach, filed on June 29, 1848, explicitly state that the sheriff had paid over the nett *504 proceeds of sale to said Mills & Beach; and without allusion, to any bond of indemnity or intimation of any condition in the payment. This bill was ultimately dismissed and the assignment sustained. Burckmyer, the agent of creditors, died on July 1, 1848.
In this bill the plaintiff claims that as representative of his intestate he is entitled to one half of the commissions on the sums (including the fifteen thousand three hundred and five dollars, eighty-one cents,) received and disbursed by the as-signee in the lifetime of the agent. This- claim is admitted to the extent of three hundred and sixty dollars, fifty-five cents, of which three hundred dollars were paid to the intestate in his lifetime, and resisted as to commissions on the said sum of fifteen thousand three hundred and five dollars, eighty-one cents. If this latter sum of money was received and disbursed by the assignee during the life of the agent, it is clear on the terms of the Act of 1828, and it is undisputed, that the representative of the agent is entitled to one half of five per cent, for receiving, and of two and a half per cent, for paying. The Circuit Chancellor acting on the maxim, in fiatione legis, equitas existat, disallowed plaintiff’s claim to commissions for payment to 0. Mills & Co., because there had been no actual apportionment of the assigned estate among the creditors in the agent’s lifetime, although it was ultimately shown that 0. Mills & Co. were entitled under the assignment to a larger sum than that paid to them by the sheriff. If there were error in the decree in this particular, it is not made the subject of appeal, and it cannot logically support to any extent the conclusion that the Chancellor also erred in allowing commissions for receiving the money.-
The assignee has retained in his hands the full sum of seven and a half per cent, on his receipts and disbursements, and has made no abatement from the demands of 0. Mills & Co., of which he was a partner for interest on the sum aforesaid received and used by them for a year at least before the appor *505 tionment of assets. It is clear beyond dispute, that according to the provisions of the Act the assignee is entitled to half only of these commissions; and it is equally clear that if he did not regard the delivery of the money to 0. Mills & Co., as a payment to himself as assignee, he should have charged himself or his firm in his accounts for the use of this money. I grant that these matters present properly issues between the creditors and the assignee, and that the plaintiff must establish his title to a moiety of the commissiqns, notwithstanding the defendant retained the whole wrongfully; yet as the creditors have not complained, and as an equivocal possession or any other act of a party is to be construed lawful rather than tortious, some presumption arises from these circumstances that defendant retained the whole commission's in right of himself and the agent, and that he is trustee for the plaintiff as to one half.
The question of the cause is, whether the defendant received the money above mentioned as assignee in the life of the agent. So far as I understand the views of the majority of the Judges, expressed in conference, some of them suppose that the money was in the custody of the Sheriff, until May 18, 1849, and that the transaction of May 16, 1848, was a private loan or deposit by him, upon indemnity to 0. Mills & Co., who thereby incurred no greater liability than any stranger would have incurred, by like loan or deposit; and others of the majority suppose that the character of judgment creditors, in which 0. Mills & Co. professedly received the money from the Sheriff, cannot be varied by the event showing that one of the firm only was entitled to receive, and in a different character, as assignee. I will consider the elements of these views.
It appears by the testimony of Mr. Brewster, that the plaintiffs in execution gave a bond to the Sheriff for his indemnity, when they received the money; but it is at least doubtful whether this fact should vary the case, when the bond itself is not produced, nor its loss accounted for. At all events, it *506 should be treated simply as a bond of indemnity, and not tortured into a bond to secure the forthcoming of money lent or deposited. It cannot be fairly conjectured, that it was intended to limit or qualify the payment, or any thing more than an instrument for the protection of the Sheriff, in a payment which might turn out to be wrongful. Prudent Sheriffs exact such obligations, in all cases of disputed claims to funds; but such obligations are merely superfluous, in no respect controlling the rights of the parties, when the actual payment is sustained as rightful. It appears by the answers of the Sheriff and of 0. Mills and E. M. Beach, to the bill of E. L. Adams, and others, that all of those persons concerned in the paying and receiving, considered the payment to 0. Mills & Co. as effective and complete, and not limited by the bond of indemnity. If the defendant had never ratified the payment to 0. Mills & Co., and the Sheriff had sued this firm on the bond of indemnity, surely they could have defended themselves successfully, by showing that bne of them was entitled at the time to receive the money, although in a different character from that in which it was received.
When Mr. Shingler sold the goods, and received the money in question, the mandate of the 'Court to him officially to sell and receive was suspended in energy ; and he acted as private agent of all the parties, and of course of the assignee and agent who were ultimately adjudged to be entitled to the proceeds of sale. Pie was in effect the agent of whomsoever might have the right, and his receipt of the money was a receipt by his eventual principal, with the consequence 'of commissions.
Granting, however, thp,t the consent of parties to the sale merely waived the order suspending the execution, and that the Sheriff throughout acted officially, the same conclusion may be attained. Supposing the Sheriff to have officially ■ paid the money to the plaintiffs, in the execution then subsisting, (and I have already shown that both parties treated it as payment in fact,) thé payment was lawful and effectual at the time, for one *507 of the partners had full right to receive. A structure sustained by various props, does not necessarily fall, because one .of the props is not stable. A party having legal right to the possession of a fund, is not damnified by relying on some untenable title, any more than a party entitled to the judgment of a court in his favor, is obstructed by false argumentation in his behalf. E. M. Beach, when he received the money from the Sheriff, was entitled to receive it as assignee, and his title is not impaired by his mistake that he had a right to receive it as a judgment creditor. Having two rights, he might fall back, when one failed, upon the other.
From the nature of partnership, each of the partners is in constructive possession of the whole assets of the firm. It- is physically impossible that more than one can have actual custody of a single article at the same time, but in legal construction all the partners possess what any of them may receive and keep. E. M. Beach received the money which was paid to 0. Mills & Co., of which he was a partner.
If all the foregoing reasoning be unsound, the ratification by Beach as assignee of the payment in May, 1848, seems conclusive of the case. By adding his signature as assignee to the receipt of his attorneys to the Sheriff, he explicitly recognized the receipt by him as assignee at the date of the original receipt. The prefixing a date to his confirmation, serves only to show the time of his confirmation, and not to restrict the completeness, and necessary retroaction of his confirmation. The money was in fact paid to him in May, ,1848, and not in May, 1849, and he acknowledges and adopts this fact, by subscribing the original receipt. Subsequent assent to what has already been done, has a retrospective effect, and is equivalent to a previous command. Omnis ratihábitio retrotrahitur et man-dato priori sequparatur. When a man pays a sum of money or buys goods for me, without my knowledge or request, and afterwards I agree to the payment, or receive the goods, this is equivalent to my previous request to him to pay or buy. So, *508 if the goods of an owner are wrongfully taken and sold, be may waive action against tbe wrong-doer, and treat him as an agent, and may adopt the sale and maintain an action for the price against the purchaser. Such adoption of agency relates back to the original transaction, and places it on the same footing as if the authority had been conferred before the transaction. Broom’s Leg. Max. 345, 380-3; Chitty on Cont. 212 and n.; Lawrence v. Taylor, 5 Hill (N. Y.) 113.
I adhere to the Circuit decree.
O’Neall and Whither, JJ., and JohNSTON, Ch., concurred.

Decree modified.